## UNITED STATES v. WESLEY COLE BREEDEN

## STATEMENT OF FACTS

Leading up to August 4, 2015, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC") posted an advertisement on an internet website known to law enforcement to be used by individuals who have a sexual interest in children. The advertisement was titled "Incest/Taboo" and stated, "Looking to meet other young incest/taboo, no limits dads/fam for chat n more… please be real and discrete."[1] On July 30, 2015 at approximately 9:47 a.m., the defendant, later identified as Wesley Carl Breeden, responded to the UC by sending a message to him introducing himself as "Wes" and indicating he is 29 years old and lives in Springfield, Virginia.

The UC responded to the defendant's message and the two began an email exchange through the default social network email. The UC introduced himself as a father and asked whether the defendant was also a dad, to which the defendant responded, "Yes." The UC stated that he has a 9-year-old daughter and asked the defendant if he was "an incest dad." The defendant responded that he does not look at his daughter "that way" but as "thought about it." The defendant stated, " I'm into force play, family, and rough play."

The UC and the defendant then agreed to begin communicating via their personal emails. The UC provided the defendant an email address and the defendant provided the UC an email address of "surfperu.gsxr@gmail.com." The defendant sent the UC an email stating, "I fucked a 13year old twice in south america and fucked a 16year old 8 times last year cuz she likes

---

[1] All typographical errors and abbreviations in text or email messages quoted herein are original.

daddies....i don't have any pics of her on this computer..... i keep everything on a usb flash drive...whats the most you have done? Has your tasted ur cum? do u have any special pics of your?" The UC responded that he would be interested in seeing the pictures, to which the defendant responded, "I have full body shots and videos....ever taken pics and vids of her while she plays with u?" The UC responded, "Yes I have a few of mine as well, when can we share ?"

The defendant then inquired whether the UC had "ever thought about sharing her" to which the UC responded, "I'm always down for sharing." The UC then wrote, "A lot but only if I can find another trusted person. I want to see her suck a strange cock bad." The defendant responded by writing, "i can understand that. Trust is a really big thing that is extremely important." The UC and the defendant then agreed to switch their means of communication to text messaging, and the UC provided a telephone number at which the defendant could contact him.

On July 30, 2014 at approximately 11:15 am, the defendant sent a text message to the UC from phone number 703-477-1765. Law enforcement agents obtained subscriber information for that phone number, and identified it's subscriber as Wesley Cole Breeden, with an address in Springfield, Virginia. Further investigation revealed that the defendant had a Virginia Driver's License issued to an address on Beachway Lane, Springfield VA 22153. The driver's license photograph was of the same individual depicted in an image the defendant sent to the UC via the email address above.

From the telephone number 703-477-1765, the defendant sent the UC five images he stated were of a child, each depicting her legs and underwear, but not showing the child's upper body or face. The defendant then asked the UC for a photograph of the UC's purported daughter. The UC sent the defendant two images of his purported daughter. The photos did not

depict a real child. The defendant sent the UC a message stating, "Wish we could meet for some play time…." The UC responded that he would have his purported daughter the following week and asked about the defendant's schedule. The defendant responded, "I'm free after 2:30 pm m-f."

The defendant then sent the UC a message stating, "OK…. I have pics of my 16 yo step neice that I have been fuck." He continued, "I have a lot of picts and 3 vids of her on a flash drive in my at." The UC asked the defendant, "What is the vid of?" to which the defendant responded, "Her playing with my dick." Later in the exchange, the UC asked the defendant, "What are the pics of?" to which the defendant stated, "Her playin doctor on me ;)"

In addition, during the course of the text exchange, the UC asked the defendant about the UC's purported child, "What do you want to do with her when we meet up?" The defendant responded, "What would I be aloud to do?" The UC wrote, "I will let u finger her, lick her pussy, her sucking your dic." The defendant asked the UC about how often the UC had his purported daughter and the UC asked the defendant the same questions. The defendant then asked the UC, "Can u host?" to which the UC responded, "Yes." The UC told the defendant, "I love alone in an apartment in DC. Near verizon."

The UC then asked the defendant if the defendant could show the UC "some of the pics or the vid before." The defendant stated, "I'll have to go home and try to find it. I hid it somewhere in my garage…Forgot where so ill have to search hard. But I can send u a lot of pics of m." The UC asked the defendant, "Do u have any other pics you have taken with really yng?" to which the defendant responded, "y step neice. She loved it when I took pics of her. She's my little freak." Not on me. Only of my 16yo niece." The defendant also stated, "I'll look for the

flash drive later today....The pics of my niece are really good. Her little tits just started popping out...... And her pussy is always bald."

The defendant then asked the UC a series of questions about the extent of the UC's sexual activity with his purported daughter. Specifically, the defendant asked the UC, "Has yours swallowed ur cum?" The UC responded, "Yes, she still gags a bit with a hard big load but is getting better." The defendant then stated, "Nice.... What else have you done with her?" to which the UC responded, "Masturbates together....Watched porn with her, make her suck dildos while I lick her pussy." The defendant asked, "Does she finger deep?" to which the UC responded, "Yes and can go all the way....With finger." Shortly thereafter, the UC and the defendant ended their text chat.

On July 31, 2015, the defendant contacted the UC again via text message. The UC told the defendant that he had his purported daughter "Tuesday, if your not interested no worries just let me know no big deal." The defendant responded, "I'm still interested, sry just been busy.....Tuesday should be perfect."

On August 3, 2015, the defendant again contacted the UC. The following text message exchange ensued:

    Defendant: We still on for tomorrow?

    UC : Yes 230 good?

    Defendant: 3 would be better.

    UC: That works.

    Defendant: Can I watch u and her play first to make me more comfortable

    UC: Yes I can start first before you join

    UC: Do you mean just watch tomorrow and play another day?

UC: Or watch me play and then join in tomorrow

Defendant: No watch u first while sitting next to u then ill gradually join in

UC: Ok cool that will work the best and make here feel more comfortable, I did talk to her and she is totally cool about it

The defendant then proceeded to ask the UC about the logistics of meeting the UC, including how the parking around the UC's home would be. The defendant also informed the UC he would travel via a motorcycle. The text messages then returned to the planned sexual activity with the UC's purported daughter:

UC: How do you want to cum with her?

Defendant: U tell me which way she would be ok with.

UC: She will be cool with sucking and jerking your cock. She is also into getting her pussy licked but she is sensitive / ticklish down there. Just no no fucking with her. I'm cool with touching and fingering and cumming on her.

Defendant: OK cool. Sounds like Fun. Do you have anymore pics of her. I would love to see more of her.

UC: I will look and see, do u have any more if your lil one or others, if that was her in the other pics you sent she is cute as hell

UC: Are you ok with the no fucking part, you just want her to give you a blow job.

Defendant: I'm cool with no fucking....Yes she can blow and jerk me that's cool.

…

Defendant" How do u useally start with her?

UC: I'll get her on couch, usually start rubbing her leg.

Defendant: Mmm sounds nice. Does she rub u back or not at first.

UC: Yes she does after I run her legs and were my way up to her lit.

Defendant: Do u allow kissing?

5

UC: Yes that is cool

Defendant: Does she like making out?

UC: Yes she is getting better too.

Defendant: I would like to see how good she is.

UC: Yesss. Love to watch that.

The defendant and the UC then resumed discussions of the meeting, and arranged to meet at a Starbucks on "7th and h on corner." The UC provided the defendant directions to the location, at which time the text exchange concluded.

On August 4, 2015, at approximately 8:04 am, the defendant sent the UC a text message stating, "So today is the day huh." The UC stated, "I'm looking forward to this afternoon….Can't wait to see her take a strange cock." The defendant responded, "Mmm I can't wait. I was thinking about getting off work early just to make it happen sooner. Is that ok? I was gonna get off at 1:30." The UC responded, "Let me try to move some appointments."

The defendant then sent the UC additional images depicting two images of a child wearing underwear and focused on the vaginal area and buttocks, as well as an image of a post-pubescent child, focused on the child's breasts and abdomen. The defendant stated about the third image that, "the last one is of my little 15yo I've been playing with…" The UC sent the defendant images depicting the abdominal area of his purported 9-year-old daughter, in which she was clothed in underwear.

The defendant then asked the UC whether he ever plays with his purported daughter in the shower, to which the UC responded, "Yes." The defendant then suggested, "Nice… We should try that as well if ur up for it….If she's ok with that. If not its all good. Not trying to

6

make her uncomfortable at all." The UC responded, "Yes we can do it for sure she is not really shy but I will start just to break the ice."

The defendant and the UC then agreed to meet at 2:00 pm, and the UC provided the defendant his purported address. The defendant asked about parking and indicated he would be driving by car, which the defendant indicated was a Red Honda civic. The defendant sent the UC a picture of his car. The defendant agreed to meet the UC in front of the UC's apartment. At approximately 1:45 pm, the defendant again texted the UC stating, "Eta 7min" to which the UC responded, "OK cool." At 1:55 pm, the defendant texted the UC, "Here."

At the time the UC received the text message that the defendant had arrived, the UC was sitting on a bench in front of the agreed upon meeting location. Upon receiving the text message, the UC saw the red Honda Civic parallel parked in front of the meeting location. The UC approached the defendant's car and introduced himself through the sunroof of the car. The UC told the defendant he could park underneath the building rather than in the parking garage previously discussed, to which the defendant agreed. When the UC turned to walk in the building to give the defendant parking access, the UC gave the arrest signal and a team of agents approached and arrest the defendant.

The defendant was provided his <u>Miranda</u> warnings and interviewed. During the interview, the defendant confirmed that the above phone number and email address were his, and admitted meeting the UC on a social networking website. The defendant also confirmed that he lives in Springfield, VA and works at Fairfax County Schools. The defendant stated that he is separated from his wife and does not have a child. The defendant admitted driving from Springfield, VA to the District of Columbia to meet the UC, but claimed his intent in coming to

the District of Columbia was to speak with the UC and understand why the UC would act the way he does and then to report the UC to the police.

_____
Detective Timothy Palchak

Sworn before me this _____ day of _____

_____
Magistrate Judge Alan Kay
United States District Court for the District of Columbia